*CA 17-1004-LPS*

UNITED STATES DISTRICT COURT
DISTRICT of DELAWARE

John A. Olagues, Pro Se
413 Sauve Rd, River Ridge LA. 70123
504-305-4071
Olagues@gmail.com
A shareholder of Navient

RECEIVED
DEC 11 2017
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Plaintiff

Private Right of Action
Under Section 16 b of the
Securities Act of 1934

v.

John Remondi CEO Navient Corp
Mark Heleen Chief Legal Officer and

Navient Corp, nominal defendant

Defendants

## Request for Judicial Notice

Plaintiff, John Olagues requests this court take Judicial Notice of attached
affidavit as attorneys for the defendants have made a statement in their
FRCP 12 b-6 Motions which are inconsistent with events and facts.

1

# Affidavit of John Olagues

Below is a copy of a paragraph from the Defendant's Opening Brief in Support of their 12 b-6 Motion

## III. CONCISE STATEMENT OF FACTS

### A. Olagues's Long History of Pro Se Securities Claims

Plaintiff John A. Olagues is a serial, vexatious, pro se litigant. In 1988, the Ninth Circuit sanctioned Olagues in connection with his attempt to intervene in a securities lawsuit. Charles v. Keaton, 848 F.2d 1242 (9th Cir. 1988)(unpublished opinion). Again in 1990, the Ninth Circuit sanctioned Olagues in connection with a pro se securities claim. Olagues v. Schmidt, 897 F.2d 533 (9th Cir. 1990) (unpublished opinion). In 2008, a judge in the Eastern District of Louisiana, considering Olagues's purported civil rights claims under 42 U.S.C. § 1988, held that "Olagues' case indeed is frivolous, as it has no basis in law whatsoever. The Court finds that Plaintiff likely knew that this claim was duplicative and frivolous because he was involved in the prior litigation himself." Olagues v. Kousharian, 557 F. Supp. 2d 731, 741 (E.D. La. 2008). In 2014, a federal district court granted a motion to declare Olagues a vexatious litigant. Olagues v. Marin Dist. Attorney, No. C 14-00818 JSW, 2014 WL 3704918, at *7 (N.D. Cal. July 23, 2014).

On the next page is the above paragraph with sentences separated

2

III. CONCISE STATEMENT OF FACTS

A.   Olagues's Long History of Pro Se Securities Claims

1.  Plaintiff John A. Olagues is a serial, vexatious, pro se litigant.
2.  In 1988, the Ninth Circuit sanctioned Olagues in connection with his attempt to intervene in a securities lawsuit. Charles v. Keaton, 848 F.2d 1242 (9th Cir. 1988)(unpublished opinion).
3.  Again in 1990, the Ninth Circuit sanctioned Olagues in connection with a pro se securities claim. Olagues v. Schmidt, 897 F.2d 533 (9th Cir. 1990) (unpublished opinion).
4.  In 2008, a judge in the Eastern District of Louisiana, considering Olagues's purported civil rights claims under 42 U.S.C. § 1988, held that "Olagues' case indeed is frivolous, as it has no basis in law whatsoever.
5.  The Court finds that Plaintiff likely knew that this claim was duplicative and frivolous because he was involved in the prior litigation himself." Olagues v. Kousharian, 557 F. Supp. 2d 731, 741 (E.D. La. 2008).
6.   In 2014, a federal district court granted a motion to declare Olagues a vexatious litigant. Olagues v. Marin Dist. Attorney, No. C 14-00818 JSW, 2014 WL 3704918, at *7 (N.D. Cal. July 23, 2014).

Olagues was not sanctioned in the Ninth Circuit in the case Charles v. Keaton 848 F.2d 1242 (9th Cir. 1988) and no vexatious filings were made by him in that court.

There was no vexatious filings by Olagues in the Ninth Circuit in the case Olagues v. Schmidt 897 F.2d 533 (9th Cir 1990).

These two above cases were the result of an employee of Olagues who lost $600,000 from writing calls to insider traders who were illegally buying calls prior to the announcement of a takeover of Sante fe International in 1983. The SEC collected $10 million from the insiders but excluded my employee from the recovery. So I filed suit against the insiders to recover the loss and recovered some of the loss in cases not mentioned here. In the Olagues v. Schmidt case I sought to take the deposition of one of the beneficiaries of the SEC distribution of the $10 million.

The Charles v. Keaton was the case where other options market makers had filed a suit to recover the $10 million into which I tried to intervene.

---------------------------                          3

The cases mentioned in paragraphs 4,5, and 6 above were where my two young daughters were being molested by my ex wife's boyfriend and that I tried to enforce the joint custody order from New Zealand, where the children and my ex wife were residents.

I was arrested 4 times in Louisiana as a fugitive from California, (see Exhibit A) when the Marin County California Assistant DA, Leon Kousharian, perjured himself and claimed that I illegally removed the children from California to Louisiana where I was a resident (see Exhibit B).

The Judge dismissed the attempt to extradite. Kousharian later admitted his perjury as he admitted that there was no prohibition from removing the children from California to Louisiana,, thereby making the 4 arrests and as a fugitive fraudulent. It also made the seizure of my children illegal. (see Exhibit C)

The ADA Kousharian also committed perjury when he swore that I violated a California custody order, notwithstanding the fact that there was never a custody order from California. But there was a joint custody order from New Zealand.(Exhibit D)

The Jury and Judge expressed respect for Plaintiff Olagues (see Exhibit E)

There was no vexatious filings in any court related to the fraudulent arrests of me and the seizure of my children.

The attorney for Navient has not and can not produce any vexatious filings made by Plaintiff, Olagues in any court.


Respectfully submitted:

John Olagues

# Exhibit A

JPSO clerk showing the 4 Arrests to extradite Olagues as a Fugitive with the Judge denying the attempt to extradite.

Name: _John Andrew Olagues, Jr._

Race: _W_   Sex: _M_   DOB: _04/20/1945_

ARMMS CCN: _1000240714_   MOTION CCN: _____

Arrest date: _07/23/2003_   Item nbr: _G-25760-03_

L.R.S.: _14:000_   Charge: _Fugitive / State of California_

Arrest date: _09/16/2003_   Item nbr: _I-17433-03_

L.R.S.: _14:000_   Charge: _Fugitive / Governor's Warrant_

Arrest date: _10/14/2004_   Item nbr: _J-15390-04_

L.R.S.: _14:000_   Charge: _Fugitive / Marion Co. California_

Arrest date: _12/16/2004_   Item nbr: _J-15390-04_

L.R.S.: _14:000_   Charge: _Fugitive / California_

Arrest date: _____   Item nbr: _____

L.R.S.: _____   Charge: _____

Arrest date: _____   Item nbr: _____

L.R.S.: _____   Charge: _____

JPSO Clerk's Initial/ _1632-2_ Date _12/18/08_

03-4733

*D.V. J*

## AFFIDAVIT

### STATE OF LOUISIANA

### PARISH OF JEFFERSON

### 24 TH JUDICIAL DISTRICT COURT

#### G-25760-03

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY CAME AND APPEARED   TECH. PEGGY TRANCHINA, EXTRADITION OFFICER, JEFFERSON PARISH SHERIFFS OFFICE,, WHO BEING FIRST DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT THE 25 TH   DAY OF JULY,  2003, WITHIN THE JURISDICTION OF THE HONORABLE COURT, IN THE PEACE OF THIS STATE THEN AND THERE BEING ONE OLAGUES, JOHN ANDREW  W.M. 04/20/45, WGT/190 HGT/604, HAIR/GRY EYES/HAZ. RESIDING AT 413 SAUVE RD, RIVERIDGE, LA.. AND IS PRESENTLY  IN THE JEFFERSON PARISH CORRECTIONAL CENTER.

DID THEN AND THERE BECOME A FUGITIVE FROM JUSTICE FROM THE STATE OF  CALIFORNIA, WHERE SAID SUBJECT IS WANTED FOR THE CRIME OF   CONTEMPT OF COURT VIOLATION OF CUSTODY DECREE.. THE JEFFERSON PARISH SHERIFFS OFFICE HAS ON FILE A COPY OF WARRANT. FROM THE STATE OF CALIFORNIA, , CITY ST.RAFAEL  COUNTY OF MARIN ,  ADVISING THAT THEY HOLD ACTIVE WARRANT FOR ONE :  OLAGUES, JOHN  ANDREW   W.M. HGT/604, WGT/195 ,  HAIR/GRY,  EYES/BRO, CASE # SC130753A ISSUED ON 07/22/03, BY JUDGE VERNA A ADAMS

THE  DEMANDING STATE OF  **CALIFORNIA** ,  WILL EXTRADITE ON

THIS MATTER   CONTRARY TO THE FORMS OF THE STATUES OF

LOUISIANA, IN SUCH CASES MADE AND PROVIDED, AND AGAINST THE

PEACH AND DIGNITY OF THE SAME.

WHEREUPON, DEPONENT CHARGES THAT SAID  **OLAGUES,  JOHN
A. W.M. 04/20/45** ,  WITH  BEING   **A FUGITIVE FROM THE STATE OF
CALIFORNIA**   ,   AND PRAY THAT HE   MAY BE ARRESTED AND DEALT
WITH ACCORDING TO LAW.

SWORN TO AND SUBSCRIBED BEFORE ME THIS  **25 TH**  **DAY  OF  JULY** , **2003**

**TECH.PEGGY TRANCHINA,EXTRADITIONS**

**MAGISTRATE JUDGE**



GOVERNOR GRAY DAVIS

STATE OF CALIFORNIA

EXECUTIVE DEPARTMENT

## TO HIS EXCELLENCY THE GOVERNOR OF THE STATE OF LOUISIANA

**WHEREAS,** it appears by the annexed application for requisition and copies of **Amended Complaint with Finding of Probable Cause by a Judge** and supporting papers, which I certify are authentic and duly authenticated in accordance with the laws of California, that under the laws of this state **John Andew Olague** stands charged with the crime of **Violation of a Custody Decree** committed in this state, and it has been represented and is satisfactorily shown to me that the fugitive was present in this state at the time of the commission of the crime and fled from the justice of this state, and has taken refuge and is now to be found in the State of **Louisiana;**

**NOW, THEREFORE,** pursuant to the provisions of the Constitution and the laws of the United States and the laws of the State of California and the laws of the State of Louisiana, I do hereby respectfully demand that the above-named fugitive from justice be arrested and secured and delivered to **Deputy Sheriff Royal Atkinson and/or agents of Marin County** hereby authorized to receive, convey, and transport the fugitive to this State, here to be dealt with according to law.

**IN WITNESS WHEREOF,** I have hereunto signed my name and caused to be affixed the Great Seal of the State, at Sacramento, California this 18th day of August, 2003:

_____
Governor

By the Governor

_____
Secretary of State

_____
Deputy

STATE CAPITOL · SACRAMENTO. CALIFORNIA 95814 · (916) 445-2841

STATE OF LOUISIANA

Versus

JOHN A. OLAGUES

24TH JUDICIAL DISTRICT COURT

Parish of Jefferson, State of Louisiana

No. 03-4733          Division "J"

*12-5-03*

## O R D E R

This extradition proceeding comes before this court on defendant's motion for an order to recall and set aside the governor's warrant.

On June 22, 2003, a warrant for the arrest of defendant was issued in Marin County, California. The following day the defendant was arrested in Jefferson Parish, defendant's domicile. Defendant immediately requested in the form of a personal bond undertaking, *i.e.*, that he be allowed to sign himself out of jail. This request was denied. A formal motion was later filed, and the matter was fixed for hearing on June 28, 2003. At the hearing, bail was set in the amount of $50,000.00. Defendant informed the court that he intended to contest extradition, and a hearing on extradition was set for August 8, 2003. Defendant was remanded to the sheriff and subsequently posted bail.

On August 8, 2003, the district attorney indicated that neither the California requisition nor the Louisiana governor's warrant had been issued. The defendant, in proper person, strenuously objected and insisted on his hearing. Because C.Cr.P. 270 limits continuance to 60 days, the motion for continuance was granted and the hearing on extradition reset for October 15, 2003. The court notified the district attorney that no further delays would be granted.

On September 9, 2003, the warrant was issued by the governor of this state. While awaiting his hearing and free on bail, the defendant was again arrested on September 16, 2003, apparently without further cause and on the same authority for extradition for which the defendant had already

posted bail.  He was held for three days and released on the same bond.

On October 15, 2003, the district attorney again moved for a continuance of the hearing, which the court denied as forewarned.  Apparently unable to demonstrate that defendant was the same individual wanted by California as required by law, the district attorney dismissed the extradition proceeding.  The defendant and the surety were then discharged.

Defendant now maintains that the same warrant remains outstanding, and fears that he may again be rearrested on the same warrant from which he has already been discharged.  Defendant now moves this court for an order to recall and set aside the governor's warrant.

Under the circumstances, denial of defendant's motion would render any extradition ruling in favor of the defendant meaningless.  The defendant was arrested twice, and the hearing on extradition was set twice, all as a result of the same extradition requisition.  The matter was dismissed by the district attorney and the defendant was discharged.  Due process clearly requires that the defendant be free from a third arrest for an extradition proceeding which has been dismissed.

Accordingly:

IT IS ORDERED, ADJUDGED, AND DECREED that the governor's warrant for extradition signed by Governor M. J. "Mike" Foster, Jr., dated September 9, 2003 for the arrest of John A. Olagues is hereby vacated and set aside.  Nothing herein shall prevent the issuance of a new warrant.

GRETNA, LOUISIANA, this  5th  day of  December , 2003.

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

_____
J U D G E

No. 03-4733

# Exhibit B

ADA Kousharian perjured Points and Authorities of July 22, 2003 with resulting fraudulent court orders

1  PAULA FRESCHI KAMENA, District Attorney
   LEON S. KOUSHARIAN, Deputy District Attorney
2  State Bar Number 203945
   3501 Civic Center Drive, Room 130
3  San Rafael, California  94903-4196
   Telephone:  (415) 499-6450
4  Fax Number: (415) 499-3719

FILED

JUL 2 2 2003

JOHN P. MONTGOMERY,
Court-Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Chen, Deputy

5

6

7                    SUPERIOR COURT OF CALIFORNIA

8                          COUNTY OF MARIN

9

10 In re the Matter of:                    )  NO. CV033401
   CHARLOTTE H. JENSEN,                    )
11                                         )
                            Petitioner,    )  POINTS AND AUTHORITIES IN
12            and                          )  SUPPORT OF APPLICATION FOR
                                           )  ORDER PER FAMILY LAW CODE
13                                         )  SECTIONS 3131-3134.5
                                           )
14 JOHN A. OLAGUES,                        )
                                           )
15 _____Respondent.____ )

16                       STATEMENT OF LAW

17        Family Law Code Sections 3131, et seq., provide that if a

18 custody or visitation order has been entered (as it has in this

19 case) and the children have been taken or detained by a person in

20 violation of that order, the District Attorney **shall** take all

21 actions necessary to locate and return the children and the person

22 violating the order and assist in the enforcement of court orders

23 through civil or criminal proceedings.

24        Family Law Code Section 3132 states that, "in performing

25 the functions in Sections 3130 and 3131, the District Attorney

26 shall act on behalf of the court and shall not represent any party

27 to the custody proceedings."

28 //

                               1

ORIGINAL

1

Family Law Code Section 3133 states:

2
3
4
5
6
7
8
9
10

If the District Attorney represents to the court, by written declaration under penalty of perjury, that a temporary custody order is needed to recover a child who is being detained or concealed in violation of a court order or a parent's right to custody, the court may issue an order, placing temporary sole physical custody in the parent or person recommended by the district attorney to facilitate the return of the child to the jurisdiction of the court, pending further hearings. If the court determines that it is not in the best interests of the child to place temporary sole physical custody in the parent or person recommended by the district attorney, the court shall appoint a person to take charge of the child and return the child to the jurisdiction of the court. (Emphasis added.)

11

12

### STATEMENT OF FACTS

13

The facts surrounding the removal of the children from

14   the State of California in violation of a valid child custody order

15   are stated in the accompanying Declaration of District Attorney

16   Investigator Patricia Stafford.

17

### ARGUMENT

18

On July 18, 2003, the Marin County District Attorney's

19   Office was notified by Petitioner Charlotte H. Jensen that

20   respondent John A. Olagues had failed to abide by the current

21   custody orders and that ultimately Petitioner, Charlotte H. Jensen,

22   feared that Respondent John A. Olagues had abducted her children

23   Caroline and Christine.

24

The District Attorney's Office has conducted an

25   investigation into this matter.  (As is outlined in the attached

26   declaration prepared by District Attorney Investigator Patricia

27   Stafford.)  As a result of that investigation, Respondent John A.

28   //

2

---

POINTS & AUTHORITIES IN SUPPORT OF APPLICATION (FAM LAW CODE §§3131-3134.5)

1    Olagues will be charged with a felony count of Penal Code Section

2    278.5 (violation of custody decree/child abduction).

3         Based upon the above-mentioned investigation, the

4    District Attorney's Office has concluded that Respondent John A.

5    Olagues is in violation of the current custody court orders and has

6    unlawfully removed the children from the State of California

7    without approval of the court or the children's mother.

8         Based upon the investigation conducted by Investigator

9    Stafford, the District Attorney's Office believes that the children

10   are currently in the State of Louisiana.  The District Attorney's

11   Office intends to contact the authorities in Louisiana and, with

12   their assistance, remove the children from their father's custody

13   and return them to Marin County.  In order for this to occur, the

14   District Attorney's Office is requesting that the Court order the

15   Olagues children to be placed in the temporary custody of both

16   Ms. Jensen and the Marin County District Attorney's Office.  This

17   would prevent the placement of the Olagues children in foster care

18   once they are returned to Marin County.  It is the District

19   Attorney's Offices position that after removing the children from

20   their father's custody in Louisiana and placing them on a plane

21   with law enforcement officers and then placing them in foster care

22   would be extremely traumatic for the children.

23        Pursuant to Family Law Code Section 3133 and based upon

24   the District Attorney's Offices requirements to assist and act on

25   behalf of the Court, the District Attorney's Office recommends that

26   the Court change the current custody order as follows:

27        1.   Temporary custody of Caroline Kristine Olagues (DOB:

28   2-5-94), and Christine Marie Olagues (DOB: 7-12-95) is granted to

                                  3

1   the District Attorney's Office to facilitate the return of the

2   minor child to the jurisdiction of the Court pending further

3   hearings.

4         2.   If the District Attorney's Office locates the above

5   named children, they have the authority to place the children in

6   the custody/care of Petitioner Charlotte H. Jensen, pending further

7   custody hearings.

8         3.   If the District Attorney's Office places the above

9   named children in the care/custody of Charlotte H. Jensen, at that

10   time the temporary custody of the children will be placed in

11   Charlotte H. Jensen pending further custody orders and hearings.

12         Dated this 21st day of July, 2003.

13                       Respectfully submitted,

14                       PAULA FRESCHI KAMENA

                          DISTRICT ATTORNEY

15

16

17                   By:

18                       LEON S. KOUSHARIAN

                      Deputy District Attorney

19

20

21

22

23

24

25

26

27

28

POINTS & AUTHORITIES IN SUPPORT OF APPLICATION (FAM LAW CODE §§3131-3134.5)

FL-300

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):<br>Paula Freschi Kamena, District Attorney (SBN 104570)<br>Marin County District Attorney's Office<br>3501 Civic Center Drive, Room 130<br>San Rafael, CA 94903<br>TELEPHONE NO. (Optional): 415-499-6450   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FOR COURT USE ONLY<br><br>FILED<br>JUL 2 2 2003<br><br>JOHN P. MONTGOMERY,<br>Court Executive Officer<br>MARIN COUNTY SUPERIOR COURT<br>By J. Cisn, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  MARIN
STREET ADDRESS:
MAILING ADDRESS: 3501 Civic Center Drive, Room C-10
CITY AND ZIP CODE: San Rafael, CA  94903
BRANCH NAME:

PETITIONER: CHARLOTTE HOJ JENSEN

RESPONDENT: JOHN ANDREW OLAGUES

| ORDER TO SHOW CAUSE FOR   [✓] MODIFICATION | CASE NUMBER: |
|---|---|
| [✓] Child Custody   [✓] Visitation   [ ] Injunctive Order<br>[ ] Child Support   [ ] Spousal Support   [ ] Other (specify):<br>[ ] Attorney Fees and Costs | CV 033401 |

1   TO (name): JOHN ANDREW OLAGUES
2   YOU ARE ORDERED TO APPEAR IN THIS COURT AS FOLLOWS TO GIVE ANY LEGAL REASON WHY THE RELIEF SOUGHT
    IN THE ATTACHED APPLICATION SHOULD NOT BE GRANTED. If child custody or visitation is an issue in this proceeding,
    Family Code section 3170 requires mediation before or concurrently with the hearing listed below.

a.  Date: Friday, July 25, 2003  Time: 9:00 Am  [✓] Dept.: F (Judge Smith)  [ ] Room:

b.  The address of the court is   [✓] same as noted above   [ ] other (specify):

c.  [ ]   The parties are ordered to attend custody mediation services as follows:

3.  THE COURT FURTHER ORDERS that a completed Application for Order and Supporting Declaration (form FL-310), a blank
    Responsive Declaration (form FL-320), and the following documents be served with this order:
a.  (1) [ ] Completed Income and Expense Declaration (form FL-150) and a blank Income and Expense Declaration
    (2) [ ] Completed Financial Statement (Simplified) (form FL-155) and a blank Financial Statement (Simplified)
    (3) [ ] Completed Property Declaration (form FL-160) and a blank Property Declaration
    (4) [✓] Points and authorities
    (5) [ ] Other (specify):

b.  [✓] Time for   [✓] service   [✓] hearing   is shortened. Service must be on or before (date): 7-24-03 at 5:00?.
    Any responsive declaration must be served on or before (date): 7-25-03 at 9:00 A.m.
c.  [✓] You are ordered to comply with the temporary orders attached.
d.  [ ] Other (specify):

Date: July 21, 2003                        Virna A. Adams
                                                        JUDICIAL OFFICER

NOTICE: If you have children from this relationship, the court is required to order payment of child support based on
the incomes of both parents. The amount of child support can be large. It normally continues until the child is 18. You
should supply the court with information about your finances. Otherwise, the child support order will be based on the
information supplied by the other parent.
You do not have to pay any fee to file declarations in response to this order to show cause (including a completed
Income and Expense Declaration (form FL-150) or Financial Statement (Simplified) (form FL-155) that will show your
finances). In the absence of an order shortening time, the original of the responsive declaration must be filed with the
court and a copy served on the other party at least ten calender days before the hearing date.

Form Accepted for Mandatory Use
Judicial Council of California
FL-300 [Rev. January 1, 2003]           ORDER TO SHOW CAUSE           Family Code, §§ 215, 270 et seq., 2045 et
seq., 3500 et seq., 4200
www.courtinfo.ca.gov

Page 1 of 1

ORIGINAL

www.accesslaw.com

FL-305

| PETITIONER/PLAINTIFF: CHARLOTTE HOJ JENSEN | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: JOHN ANDREW OLAGUES | CV   033491 |

## TEMPORARY ORDERS
### Attachment to Order to Show Cause (FL-300)

**1. ☐ PROPERTY RESTRAINT**

    a. ☐ **Petitioner** ☐ **Respondent** is restrained from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life.

        ☐ The other party is to be notified of any proposed extraordinary expenditures and an accounting of such is to be made to the court.

    b. ☐ Both parties are restrained and enjoined from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage including life, health, automobile, and disability held for the benefit of the parties or their minor child or children.

    c. ☐ Neither party may incur any debts or liabilities for which the other may be held responsible, other than in the ordinary course of business or for the necessities of life.

**2. ☐ PROPERTY CONTROL**

    a. ☐ **Petitioner** ☐ **Respondent** is given the exclusive temporary use, possession, and control of the following property the parties own or are buying (specify):

    b. ☐ **Petitioner** ☐ **Respondent** is ordered to make the following payments on liens and encumbrances coming due while the order is in effect:

| Debt | Amount of payment | Pay to |
|---|---|---|

**3. ☑ MINOR CHILDREN** Per FC §3133, Patricia Stafford of the Marin Coun D.A.'s office (

    a. ☑ ~~Petitioner~~ ☐ ~~Respondent~~ will have the temporary physical custody, care, and control of the minor children of the parties, ~~subject to the other party's rights of visitation as follows:~~

    b. ☐ **Petitioner** ☐ **Respondent** must not remove the minor child or children of the parties

        (1) ☐ from the State of California.

        (2) ☐ from the following counties (specify):

        (3) ☐ other (specify):

    c. ☐ Child abduction prevention orders are attached (see form FL-341(B)).

    d. (1) Jurisdiction: This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with § 3400).

        (2) Notice and opportunity to be heard: The responding party was given notice and an opportunity to be heard as provided by the laws of the State of California.

        (3) Country of habitual residence: The country of habitual residence of the child or children is

        ☐ the United States of America ☒ other (specify): New Zealand

        (4) Penalties for violating this order: If you violate this order you may be subject to civil or criminal penalties, or both.

**4. ☑ OTHER ORDERS** (specify): SEE ATTACHED

Date: July 21, 2003          Verna A. Adams
                               JUDGE OF THE SUPERIOR COURT

**5. The date of the court hearing is** (insert date when known): July 25, 2003

---

### CLERK'S CERTIFICATE

[SEAL]      I certify that the foregoing is a true and correct copy of the original on file in my office.

Date: _____      Clerk, by _____, Deputy

---

Form Adopted for Mandatory Use
Judicial Council of California
FL-305 [Rev. July 1, 2003]

**TEMPORARY ORDERS**

Family Code, §§ 2045, 6224, 6226, 6322
6320, 6323, 6380-6383
www.courtinfo.ca.gov

www.access-law.com

*TEMPORARY RESTRAINING ORDERS*

**ATTACHMENT ORDER TO ~~FINDINGS AND ORDER AFTER HEARING~~**

**July 21, 2003**

1.  *Van* *physical and legal* Temporary custody of Caroline Kristine

Olagues (DOB: 2-5-94), and Christine Marie Olagues *Van Patricia Stafford of the Marin County*
(DOB: 7-12-95) is granted to ~~the~~ District Attorney's Office

to facilitate the return of the minor child to the

jurisdiction of the Court pending further hearings.

2.  *Van Ms. Stafford of* If the District Attorney's Office locates the
*she has*
above named children, ~~they have~~ the authority to place the
*Van , physical*
children in the custody/care of Petitioner Charlotte H

Jensen, pending further custody hearings.

3.  *Van Ms. Stafford* If ~~the District Attorney's Office~~ places the
*Physical*
above named children in the care/custody of Charlotte H
*Physical*
Jensen, at that time the temporary custody of the children

will be placed in Charlotte H Jensen pending further custody

orders and hearings. *Ms. Stafford will retain Legal*
*custody pending such further hearing*
*Van*

# Exhibit C

Kousharian admitted perjury in earlier filings with the court page 148

.e order of magnitude of less than $10,000?

MR. KOUSHARIAN:  Yes.

THE COURT:  Are you abandoning your previous
discussion that we had to the effect that removing them from
the State of California was somehow a breach of a court
order which subjects him to punishment under 278.5?

MR. KOUSHARIAN:  No.  Either way I believe he can
be found liable under 278.5.  It is our position that the
order was limited to the State of California.

THE COURT:  Where is that?  Where do I find the
prohibition against removing them from California?

MR. KOUSHARIAN:  There is no prohibition.  The
order is ambiguous in that respect.  The only stated
visitation is to occur in California.  It does not say
anything about removing the children from California.  I
still think he's liable under 278.5 for not returning the
children to California pursuant to the order.

THE COURT:  Anything else before I hear from
Mr. Olagues?

MR. KOUSHARIAN:  No.

THE COURT:  Mr. Olagues, anything else?

MR. OLAGUES:  Your Honor, it is alleged that I
violated custody rights of Charlotte Jensen.  Now custody
rights are a right to custody as defined in Penal Code 277.
It is pursuant to a custody order.  The January 17th, 2001,
joint custody order was still in affect when that Hague
order was issued, which is confirmed in paragraph 22, which
you read Friday, your Honor.  You can't have a joint custody

# Exhibit D

Document from New Zealand showing that Olagues had equal joint custody of his children.
Reserved Decision of Judge A J Twaddle together with a letter from the New Zealand Ministry of Justice.

**IN THE FAMILY COURT**
**AT KAIKOHE**

FP027/146/00

BETWEEN                    CHARLOTTE HOJ JENSEN
                          Applicant

AND                       JOHN ANDREW OLAGUES
                          Respondent

Hearing:        11, 12 September 2002

Appearances:    I McHardy for Mr Olagues
                M Macnab for Ms Jensen
                J Marshall for the children

Judgment:       30 September 2002

---

**RESERVED DECISION OF JUDGE AJ TWADDLE**
**(Hague Convention: Access)**

---

## Introduction

[1]     Ms Jensen and Mr Olagues are the parents of Caroline aged 8 ½ and
Christine aged 7. Ms Jensen and the girls live in Kerikeri. Mr Olagues lives in New
Orleans, Louisiana, United States. Mr Olagues wants to have access to the girls in
the United States. He has the assistance of the Central Authority. The case raises
issues about —

• The standing of the Central Authority and the jurisdiction to make an access
  order;

• Whether access should take place in the United States, and if so,

  The duration of access;

Certified true copy   T. DOHERTY - McNAB
                      DEPUTY REGISTRAR
Deputy Registrar      HIGH/DISTRICT COURT
                      WHANGAREI

- Whether the girls should be chaperoned when travelling to and from the United States;

- What should be done to ensure the return of the girls to New Zealand.

## Background

[2]     Mr Olagues is a United States citizen. Ms Jensen is a Danish citizen. They married in California in 1993. Caroline and Christine were born in the United States and are citizens of that country. The family came to New Zealand in December 1995 and settled in the Bay of Islands area where Mr Olagues set up and developed a business known as the Paihia Beach Resort Hotel. Ms Jensen and Mr Olagues remained in New Zealand on work permits. The girls were granted student permits.

[3]     Mr Olagues retained work interests in the United States and returned there to work for extended periods. He was out of New Zealand between May 1999 and February 2000 and between March and November 2000. During Mr Olagues' absence, Ms Jensen formed a new relationship. That this new relationship existed was not confirmed for Mr Olagues until he returned to New Zealand in November 2000 and the marriage then ended. These circumstances caused considerable friction between Mr Olagues and Ms Jensen and their relationship remains fraught with tension. Ms Jensen applied for a protection order and for custody of the children. Mr Olagues opposed these applications and filed a cross application for custody.

[4]     An interim order preventing the removal of the children from New Zealand made on 21 December 2000 remains in force.

[5]     In January last year an order was made that the children would be in the interim custody of Mr Olagues essentially for 3 weekends out of 4. When not with their father, the children were to be in the interim custody of Ms Jensen. Following an incident early in February, the interim custody order in favour of Mr Olagues was suspended, but was reinstated shortly after. Mr Olagues then continued to have contact with the girls in terms of the order until 30 April.

"Certified true copy
T. DOHERTY - McNAB

authority to enforce a New Zealand access order where the child is habitually resident and present in New Zealand, and such a construction is unlikely to accord with Parliament's intention. This is recognised in *Turton* which proceeds on the basis that for the section to apply there must be a non custodial parent living overseas. Mr Pidgeon in his article also refers to a foreign parent. To adopt Ms Macnab's argument would be to put a further gloss on the section restricting its application to cases where there is an access order made overseas or a New Zealand order directing access overseas.

[22]   The term "rights of access" is defined in the Guardianship Amendment Act as meaning the right to visit a child and includes the right to take a child for a limited period of time to a place other than the child's habitual residence. The term "rights of custody" includes rights relating to the care of the person of the child and in particular the right to determine the child's place of residence, attributed to a person, institution or other body, either jointly or alone, under the law of the contracting state in which the child was habitually resident immediately before the removal or retention of the child. Custody is defined in the Guardianship Act as meaning the right to possession and care of a child. Mr Olagues has an interim joint custody order giving him the right to the possession and care of the children for defined periods in New Zealand. Looked at broadly, Mr Olagues' joint custody order must give him rights of access as defined in the Guardianship Amendment Act and I therefore hold he has a right of access to the children in terms of s 20 of that Act.

[23]   No details are given of the unreported judgments referred to in Mr Pidgeon's article and counsel did not refer to any. Both *Sigg* and *Gumbrell* involve existing access orders made outside New Zealand.

[24]   Section 20 is to be interpreted in its natural and ordinary sense in the light of its purpose and context. Its context is an Act to implement the Hague Convention; its purpose is to implement Article 20 of the Convention. This Article provides for an application to organise rights of access to be presented to a Central Authority; a Central Authority may initiate (by which I take to include file) proceedings to organise access. The flaw in Ms Macnab's argument is that it requires the right of another Contracting State to have been infringed and proceeds on the basis an access

T. DOHERTY - McNAB
DEPUTY REGISTRAR

order (either in the overseas country or in New Zealand) must be in existence before
the Convention applies. But Article 21 does not refer to an existing order and rights
of states are not involved; the right, if it exists, is in the applicant. The reasoning of
Judge Inglis in *Turton* is equally applicable, whether or not an order exists.

[25]   I hold the Central Authority can take up an application for access on behalf of
a foreign parent, whether or not there is an access order in existence, providing the
parent has rights of access. This would clearly be the case where a parent is a
guardian because (in the absence of a custody order) a guardian has the right to
possession and care of a child which would include a right to visit. Further, a parent
who is not a guardian would have a right of access: the Guardianship Amendment
Act is to be read together with and deemed part of the Guardianship Act (s.1) and
s15 of the Guardianship Act in giving a parent the ability to apply for access
recognises the right of a parent to access. To adopt the concept of Judge Adams in
*Gumbrell*, this right would be inchoate until given effect by a court order in New
Zealand.

[26]   It follows Mr Olagues was justified in invoking the Hague Convention and
the assistance of the Central Authority under s 20. I hold also I have jurisdiction to
make an access order under s 15 of the Guardianship Act.

[27]   Ms Macnab submitted Mr Olagues had indulged in "forum shopping"; as a
result of these proceedings being regarded as Hague Convention proceedings, he
obtained free legal advice and urgency. A consequence of the latter is the Court
might not have had the same evidence (for example, a psychological assessment) in
respect of all aspects of access (including attachment of the children, allegations of
violence and other conduct) as it would have had if the proceedings had been heard
under the Guardianship Act.

[28]   Although *Gumbrell* is authority for the proposition that it will generally be
appropriate for the Court to fast-track access proceedings under the Guardianship
Amendment Act because they arise under the general umbrella of the Convention
and involve international obligations, the statute itself does not support this
procedure:  s 14 which requires applications to be dealt with expeditiously applies

"Certified true copy"

IN THE FAMILY COURT
AT KAIKOHE

FP 027/146/00

BETWEEN        CHARLOTTE HOJ JENSEN
                     Applicant

AND            JOHN ANDREW OLAGUES
                     Respondent

AND            CAROLINE KIRSTINE OLAGUES
                     CHRISTINE MARIE OLAGUES
                     Child This Application Is About

Hearing:      15 May 2002

Appearances: M MacNabb for Applicant via Telephone
               Respondent via Fax
               J Marshall for Children
               N Cocurullo to Assist

Judgment:

## DIRECTIONS OF JUDGE J A McMEEKEN

[1]     I am dealing with the matter of Jensen and Olagues. Present is Mr Marshall counsel for the two girls; Ms MacNabb, Ms Jensen's counsel who has recently joined by telephone; Ms Jensen is present, and Mr Cocurullo, who has been appointed by the Central Authority of New Zealand to represent the father in respect of a possible Hague Convention application, is also present.

[2]     The father has filed lengthy written submissions. He has filed what he has called a second submission which the Court has only just received and in that document which is signed by Mr Olagues he says:

Jn-Jensen-CH v Olagues-JA 15-5-02 []

"Respondent offers to allow our children Caroline and Christen Olagues to
seek permanent residency in New Zealand if there are no substantive change
in the current custody arrangements."

[3]   This matter is before the Court today on an urgent basis because the children
who were born in America and are in New Zealand on student visas have visas
which will expire on 23 May.  Mr Olagues has no co-operated and indeed there is
comment in some of the documents filed that he has, in fact, obstructed Ms Jensen in
arranging to have new visas or extended visas so that the children may remain in
New Zealand pending any further orders.  The children were born in America but
have been living in New Zealand since December of 1995 when Caroline was not
quite two and Christine was almost five months old.  New Zealand is therefore really
the only home that these little girls have ever known.

[4]   At present there is a joint custody order in force and as I understand it the
father has, or will, not consent to new visa applications being made, or nor for a
residency application to be made.  That position held by the father does appear to
have changed as a result of the second submission that he has filed.

[5]   In my view this is a very urgent matter given that the children's visas expire
on 23 May.  Mr Marshall, as their counsel, has been in contact with the immigration
service and I authorise him, as he thinks it would be of assistance, to forward a copy
of these directions to the immigration service.

[6]   I adjourn this matter.  It will be recalled by way of a telephone conference at
9.00am on Monday 20 May.  I am adjourning the matter on the basis that
Mr Olagues, in his second submission to the Court, has said he will allow the
children to seek permanent residency in New Zealand if there is no substantive
change in the current custody arrangements.  He must now abide by that statement to
the Court.

[7]   Mr Cocurullo has very helpfully advised that he will liaise with Ms MacNab
immediately after Court this afternoon that he will then, later today, e-mail
Mr Olagues so that Mr Olagues knows exactly what it is that he is required to sign so
that the children's visas can be extended prior to 23 May.  Mr Olagues has also



**MINISTRY OF
JUSTICE**
*Tahū o te Ture*

**Date:**   8 October 2004

**Number of pages including cover sheet:**   1

| **TO:**   Ian Hardy | **FROM:**   Department For Courts<br>Leanne Henderson<br>Family Court Manager<br>District Court<br>Private Bag 9011<br>WHANGAREI |
|---|---|

| **To Fax Number:** | |
|---|---|
| **From Fax Number:** | (09) 983-5461 |
| **From Phone Number:** | (09) 983-5460 |
| **CC:** | |

| **REMARKS:** | **URGENT** ☐ | **For your Review** ☐ | **Replay ASAP** ☐ | **Please Comment** ☐ |
|---|---|---|---|---|

**MESSAGE:**

In answer to Mr Olagues letter dated 4 October 2004 I confirm that:

1/    I couldnot locate an original copy of the Application by Consent to amend Order dated June 18 2003, there is only a facimile copy on our file;

2/    I have forwarded a certified true copy of the affidavit of Charlotte Jensen dated July 8, 2002 by post today.

3/    I couldnot locate any order, on our file, stating that "sole custody or sole physical custody" was granted to Ms Jensen.

The information in this document is **CONFIDENTIAL** and may also be **LEGALLY PRIVILEGED**, intended only for the addressee. If you are the addressee, you are hereby notified that any use of dissemination of the information and copying of this document is strictly prohibited. If you are not the addressee, please immediately notify us by telephone and destroy this document.
Thank You.

# Exhibit E

**Jury and Judge showing Respect for Olagues for what he did.**

COPY

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2      IN AND FOR THE COUNTY OF MARIN

3      --oOo--

4

5  HON. JOHN STEPHEN GRAHAM, JUDGE      DEPARTMENT NO. D

6

7  THE PEOPLE OF THE STATE OF CALIFORNIA  ]

8                    Plaintiff,  ]

9  VS.                      ] No.  SC-130753A

10  JOHN ANDREW OLAGUES,         ]

11                    Defendant.  ]

12

13

14

15

16

17                JURY TRIAL

18     REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

19        TUESDAY, JUNE 21, 2005

20             --oOo--

21

22

23

24

25

26

27

28  REPORTED BY:  MAUREEN STEGER, CSR. No. 5721

3

1    Tuesday, June 21, 2005                    11:00 O'Clock A.M.

2                         --oOo--

3         (Whereupon, the preceding proceedings were

4         reported, but not transcribed herein.)

5              JUROR NO. 8:  We would like to speak -- I would

6    like to speak on behalf of the jury briefly, if this is the

7    right moment...

8              We jurors have reached our verdict by careful and

9    close attention to the terms of the charge, and the Court's

10   instructions.  We are burdened by the human cost of these

11   matters and wish to express our respect for the defendant.

12   We urge the Court to exercise leniency.  Thank you.

13              THE COURT:  Thank you very much.  I appreciate

14   that point of view.  I am going to set a sentencing date now

15   so that before you go, you can hear when it is and you can

16   show up, if you want to.

17              I don't solicit letters from jurors, but like

18   anybody else in the community, you can send letters

19   concerning the matter, if you want to.

20              I agree with you that while he's been here,

21   Mr. Olagues has conducted himself with dignity and patience

22   with a process which he believes has had catastrophic

23   results for him from the beginning.

24              I have expressed to him before, myself, that if I

25   were in his situation experiencing what he has experienced

26   and with his point of view about it, I would be horribly

27   angry.  I probably wouldn't be as patient and deliberate in

28   what I would be doing about it as he has been.  I have

4

1   respect for him in those regards, but the process is what it

2   is.

3          You folks obviously listened carefully to the

4   instructions and to the evidence, and did what you did.  So

5   thank you for that.

6          Mr. Olagues, the law says that you have a right to

7   be sentenced within 20 court days from today.  That's about

8   four weeks.  I need a Friday morning sometime.

9          Often it takes the Probation Department longer

10  than 20 court days to prepare a comprehensive presentence

11  report, and I am going to refer the matter to the Probation

12  Department for their observations and input.  If I set it

13  within the 20 court days from today, I would be setting it

14  on the 15th of July at 9:00 o'clock.

15         Is it okay with you if I don't set it that soon to

16  give you and the probation office more time?

17         MR. OLAGUES:  That's fine.  You can set it later.

18  That's what I am saying, if you wanted to.

19         THE COURT:  Let me propose another date that will

20  surely give them enough time and see if that works for you.

21  August the 12th would be a safe date in terms of their need

22  for time to prepare.

23         Does that date work for you?

24         MR. OLAGUES:  That's fine, your Honor.

25         MR. KOUSHARIAN:  I am out of the office on the

26  12th.  Could we have the week before or the week after?

27         THE COURT:  Do you have a preference whether it is

28  the 5th or the 19th?



)lagues
auve Rd.
Ridge, LA 70123




U.S. POSTAGE
PAID
NEW ORLEANS, LA
70123
DEC 07 17
AMOUNT
**$3.50**
R2305H127334-14

1000          19801



RECEIVED

DEC 1 1 2017

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

FIRST CLASS

Clerk of Court
United States Dist Court
District of Delaware
844 N. King St.
Wilmington DE
19801

U.S.M.
X-RAY